## Patterson *against* The Juniata Bank.

In an action of debt upon a sealed note, if it be admitted by the pleadings that the note was to be paid only in the event of a certain contingency, the plaintiff must prove that the contingency has happened, or he cannot recover: it is not sufficient to rely upon the consideration which the character of the instrument imports.

**ERROR** to the Common Pleas of *Union* county.

The Juniata Bank of Pennsylvania against William A. Patterson, who survived James Criswell. This was an action of debt upon a sealed note dated the 10th of May 1819, for $2250; upon which the plaintiff claimed to recover $250 with interest from the 21st of November 1836. The cause was decided upon the pleadings and the charge of the court.

And for a further plea in this behalf, the said defendant, by leave of the court first had and obtained, says that the aforesaid action ought not to be maintained against him, because he says, that the obligation on which the above action is founded was given by James Criswell as a stock note, (the said James, in his lifetime, and the defendant, being stockholders in said bank); that the said defendant signed said obligation as surety, and that the obligation was only to be collected in case there should be a deficiency of assets, and then a *pro rata* dividend should only be collected, and the said defendant says that there was not, at the commencement of this action, a deficiency of assets — wherefore he prays judgment.

And the said plaintiff, as to the said plea of the said William, by him thirdly pleaded, saith that the said plaintiff by reason of anything by the said William in that behalf alleged, ought not to be barred from having and maintaining the said plaintiff's aforesaid action thereof against him the said William, because the said plaintiff, in answer to the first part of the said plea of the said William, saith, that true it is that the said defendant, and the said James in his lifetime, were stockholders in the said Juniata Bank of Pennsylvania, and that the obligation on which this suit is founded, was given as a " stock note"—but that the said obligation called a stock note, is an obligation under seal, by which the said William and the said James in his lifetime, were equally obligors, jointly and severally bound, and jointly and severally liable, without this, that the said defendant signed said obligation as surety; and this the said plaintiff is ready to verify—whereupon the said plaintiff prays judgment, &c.

And the said plaintiff, as to the remaining part of the said plea

[Patterson v. The Juniata Bank.]

of the said William, by him thirdly in this suit pleaded, saith, that there was at the time of the commencement of this action, and still is a deficiency of assets of said bank, to pay and discharge its debts, dues and obligations, &c.; and this the said plaintiff prays may be inquired of by the country, &c.

The plaintiff read the note to the jury, which was the only evidence given, except as to the facts admitted by the pleadings, and the court thus instructed the jury:

" It is the opinion of the court that the single bill, above, the execution of which is admitted, entitles the plaintiff to maintain the action, and to recover on the express obligation to pay the money in six months after the date of the note, unless a legal or equitable defence is shown. The parol agreement, in direct opposition to the written obligation, is not a legal defence, nor does it constitute an equitable defence; unless it is also shown by the defendant that the plaintiff is attempting to recover contrary to equity and against the terms of the agreement by parol. Whether this be so or not, depends upon the question, whether there is a deficiency of assets to pay the liabilities or not; and until the defendant shows that there is a sufficiency of assets for this purpose, without resorting to this obligation, the equity of the defendant under his parol agreement does not arise. He that goes into chancery for an injunction against legal cause of action, must establish the whole equity upon which he seeks relief, otherwise the chancellor will not arrest the regular course of law. Notwithstanding the phraseology used in the plea, the substance of the averment is that there was sufficient assets to pay all liabilities without resorting to the defendant on the obligation on which this suit is founded. It is incumbent on the defendant to show that sufficiency. He has failed to do so, notwithstanding the suggestion on the record, accompanied by the production of the writ of sequestration, that this debt is for the use of David Candor, sequestrator, for the payment of debts. For these reasons, the court instruct the jury that the plaintiff is entitled to recover the sum claimed in the statement as due, to wit $250, with interest from the 21st of November 1836."

*Slenker* and *Miller*, for plaintiff in error, cited 1 *Saund. Pl. and Ev.* 495; *Shep. Touch.* 301; 1 *Saund. Rep.* 66; 1 *Stark. Ev.* 377.

*Donnel, contra,* cited 1 *Stark. Ev.* 378; 9 *Peters* 503.

The opinion of the Court was delivered by

Huston, J.—The question between the plaintiff and defendant was, whether there was or is a deficiency to pay liabilities without resorting to this note. The court below put it on the ground that the note created a legal liability to pay $2250, from which defendant could only be discharged by an *equitable defence.* This

[Patterson v. The Juniata Bank.]

expression came into use while a defendant, to get clear from paying an unjust bond, must go into a court of equity. Our defalcation Act of 1715 put an end to this absurdity, and ought to have put an end to the expression. What by the law of the land is a defence, and may be made in a court of law, is, in this State, a legal defence, and the term "equitable defence" ought not to be applied to it. It is not longer necessary to go into chancery to have the effect of it—it has led, and will lead to confusion of ideas as long as it is used; neither experience nor law in this State give, for the purposes of doing justice and inquiry into the merits, any more sanctity to a paper with a scroll at the end of obligor, than to one without the scroll.

We had some discussion about two negatives, which, it was said, are in the words "not a deficiency." A deficiency or not, is a fact as applied to the subject said to be deficient; and the assertions that there "is a deficiency," and that there "is not a deficiency," are directly contrary, and no man will or can consider them as the same. But it is not worth while to write a treatise on philology for this case. It is a general rule that the *onus probandi* lies upon the party who seeks to support his case by a particular fact of which he is supposed to be cognizant. 6 *T. R.* 60. And this will apply more forcibly when the evidence sought is in the possession and power of the party who asserts the fact, and who can only recover on proof of it.

To ascertain the fact, for it is a matter of fact, whether the assets of this bank, which closed in 1819, were sufficient at the commencement of this suit, at the end of 19 years (in 1838), would employ the most expert accountant some weeks—it would require more than the books to make out the fact. The dockets and suits brought — the cases in which the debt could not be recovered because of the insolvency of debtors, &c. &c. must all be looked into; and perhaps the cases in which debts were lost by neglecting to protest and give notice to endorsers, and many other matters. The plaintiff in this case alone could prove the deficiency, and must prove it on the issue made by these pleadings, and by reason and common justice, he who has no right until a certain event occurs, must satisfy the jury, by competent testimony, that it has occurred. The exceptions to this rule, if any, are few, and this case is not one of them.

Judgment reversed, and *venire de novo* awarded.